UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

RONALD W. CAMPBELL,

    Plaintiff,

    v.

SANTA CRUZ COUNTY, et al.,

    Defendants.

Case No.  14-cv-00847-EJD

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

Re: Dkt. No. 70

Plaintiff Ronald W. Campbell ("Plaintiff") filed the instant civil rights action against Santa Cruz County ("SCC"), Santa Cruz County Sheriff's Office ("SCSO"), Sheriff's Sergeant Christopher Clark ("Clark"), and Deputies Anthony Luisi ("Luisi"), Matt Delorenzo ("Delorenzo"), and Matthew Presser ("Presser"), alleging the violation of his constitutional rights pursuant to 42 U.S.C. § 1983.  Presently before the court is a Motion for Partial Summary Judgment filed by Defendants SCC, SCSO, Sergeant Clark, and Deputies Luisi, Delorenzo, and Presser.  See Dkt. No. 70 ("Mot.").  When addressing claims or issues only involving Deputies Luisi, Delorenzo, and Presser, and Sergeant Clark, the court will collectively refer to them as Defendants.

Federal jurisdiction arises pursuant to 28 U.S.C. §§ 1331, 1343, and 1367.  Having carefully considered the parties' arguments and evidence on the record, the court GRANTS IN PART and DENIES IN PART Defendant's Motion for Partial Summary Judgment.

## I.     BACKGROUND

### A.     Factual Background

The case arose out of events that took place at approximately midnight on January 31, 2013.  Dkt. No. 1 ("Compl.") at ¶ 17.  What follows is a recitation of the relevant undisputed and disputed facts taken from the parties' declarations, depositions, and separate statements.

United States District Court
Northern District of California

United States District Court
Northern District of California

### i.   The 911 Calls

On February 1, 2013 at 1:02 a.m., Plaintiff's daughter Lara Campbell called 911 and informed the operator that her husband was in the home, had a shotgun in his hands, and was threatening to kill himself. Dkt. No. 71-1 at 2:5-10.  During the same call, Lara provided her address, informed the operator that her husband had left, and hung up the phone without identifying herself.  Id. at 3:1-2.  When the operator called back and asked which way her husband had gone, Lara responded that she did not know.  Id. at 4:8-23.  She then went on to say that her husband had left his shotgun in the house; and prior to hanging up for a second time, informed the operator that her husband had returned.  Id. at 5:6-17.  The operator called a third time and spoke to Plaintiff this time, who told her that his daughter and a friend were fighting.  Id. at 6:11-13. Plaintiff did not give the operator anyone's name.  Id. at 6-7.  Dkt. No. 88-1 (Plaintiff's Response to Defendant's Statement of Undisputed Fact or "Pl. Facts"); Pl. Fact 9.  The operator informed Plaintiff that the police officers were on the way to find out who was involved.  Dkt. No. 71-1 at 7:11-15.  Next, the operator located Plaintiff's information from police records and identified him for the first time as Ronald Campbell.  Id. at 8:14-15.  During the third call, the operator requested more information from Lara about the suspect, but she refused and hung up the phone.  Pl. Facts at 5.

### ii.   Defendants Arrive at Plaintiff's Residence

The 911 operator dispatched Sergeant Clark and Deputies Luisi, Presser, Delorenzo to Plaintiff's residence.  Pl. Fact 4.  The information from the above calls was relayed to the officers as they approached Plaintiff's residence.  The operator also informed the officers that a .44 caliber handgun was registered to Plaintiff's address.  Pl. Fact 5.  Upon arriving at Plaintiff's residence, the officers positioned themselves near the top of Plaintiff's driveway.  Pl. Fact at 16.  At this point - approximately 1:31 am - the 911 operator called Lara one last time and informed both her and Plaintiff that deputies were outside the home and wanted to talk to them.  Pl. Fact 17.  Plaintiff proceeded to exit the front door and was ordered to come to the police officers' location at the top

2

of the driveway.  Pl. Fact 18.  While there is substantial dispute regarding what transpired next, it is undisputed that Plaintiff walked towards Defendant Officers and flashlights were shined on him as he did so.  Pl. Fact 22.  At some point near the officers location at the top the driveway, Defendants assert Plaintiff stopped short; but Plaintiff counters that he paused only to tell them to stop flashing the light into his eyes and resumed walking.  Pl Fact 23 (disputed).  Thereafter, Defendants broke from their cover positions and moved towards Plaintiff.  Pl. Fact 24.  Sergeant Clark grabbed Plaintiff's left wrist, Deputy Luisi grabbed Plaintiff's right wrist, and together with Deputy Delorenzo, the officers brought Plaintiff to the ground.  Pl. Facts 29, 30, 33, 34.  Deputy Presser never touched Plaintiff.  Pl. Fact 35.  Plaintiff disputes Defendants' version and contends that Deputy Delorenzo grabbed Plaintiff's feet, and that he was *slammed* to the ground by all three officers.  Pl. Facts 31 (disputed).

### iii.       Defendants Detain Plaintiff and Search His Home

After being brought to the ground, Plaintiff was handcuffed and placed in the back of the patrol car, while his home was searched.  Pl. Fact 37 (disputed).  Plaintiff disputes this only to the extent that his request to loosen his handcuffs was not granted and notes that he was handcuffed without prior warning.  Id.  Plaintiff was released after his home was searched.  Dkt. No. 88-3 ("Campbell Dep.") at 120:7-9; 122:3-8.  Deputies Delorenzo and Presser performed the search and did not locate any guns.  Dkt. No. 71-10 at 4.  The officers provided Plaintiff with all names and badge numbers of the Deputies involved and left the residence.  Id. at 5.  Defendants documented and photographed all injuries to Plaintiff, including cuts to his knee and elbow.  Dkt. No. 71-10 at 5.  While Defendants describe the cuts as minor, Plaintiff contends otherwise.  Dkt. No. 71-10 at 5; Campbell Dep. at 79:22-25 ("My elbow…had a big cut in it").

### B.       Procedural Background

Plaintiff filed the instant action on February 25, 2014, alleging the violation of his civil rights under the Fourth Amendment.  See Compl.  Defendants did not file a motion to dismiss.  As such, the complaint filed on February 25, 2014 is operative.  The allegations set forth in the

Case No.: 14-cv-00847-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR
PARTIAL SUMMARY JUDGMENT

United States District Court
Northern District of California

complaint are enumerated in the table below:

| Alleged Causes of Action | | Plaintiff | Defendant |
|---|---|---|---|
| **First** | Violation of 42 U.S.C. § 1983 | Ronald W. Campbell | 1. Deputy Anthony Luisi, JR.<br>2. Deputy Matt Delorenzo<br>3. Sergeant Christopher Clark<br>4. Deputy Matthew Presser |
| **Second** | Violation of Fourth, Fifth, and Fourteenth Amendments caused by the Breach of Duty to Supervise, Train and Discipline | Ronald W. Campbell | 1. Santa Cruz County<br>2. Santa Cruz County Sheriff's Office |
| **Third** | Violation of California Civil Code § 52.1 | Ronald W. Campbell | 1. Deputy Anthony Luisi, JR.<br>2. Deputy Matt Delorenzo<br>3. Deputy Matthew Presser<br>4. Sergeant Christopher Clark |
| **Fourth** | Intentional Infliction Emotional Distress | Ronald W. Campbell | 1. Deputy Anthony Luisi, JR.<br>2. Deputy Matt Delorenzo<br>3. Deputy Matthew Presser<br>4. Sergeant Christopher Clark |
| **Fifth** | Assault and Battery | Ronald W. Campbell | 1. Deputy Anthony Luisi, JR.<br>2. Deputy Matt Delorenzo<br>3. Deputy Matthew Presser<br>4. Sergeant Christopher Clark |
| **Sixth** | Negligence | Ronald W. Campbell | 1. Santa Cruz County<br>2. Santa Cruz County Sheriff's Office<br>3. Deputy Anthony Luisi, JR.<br>4. Deputy Matt Delorenzo<br>5. Deputy Matthew Presser<br>6. Sergeant Christopher Clark |
| **Seventh** | False Imprisonment | Ronald W. Campbell | 1. Deputy Anthony Luisi, JR.<br>2. Deputy Matt Delorenzo |

Case No.: 14-cv-00847-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR
PARTIAL SUMMARY JUDGMENT

United States District Court
Northern District of California

| | | | 3. Deputy Matthew Presser |
|---|---|---|---|
| | | | 4. Sergeant Christopher Clark |

In November of 2015, the Defendants filed the instant motion for summary judgment.  See Dkt. No. 70 ("Mot.").  This matter has been fully briefed.  See Dkt. No. 88 ("Opp."); Dkt. No. 89 ("Reply").

## II.     LEGAL STANDARD

A motion for summary judgment or partial summary judgment should be granted if "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000).  "A fact is material if it might affect the outcome of the suit under the governing law," and a dispute as to a material fact is genuine if there is sufficient evidence for a reasonable trier of fact to decide in favor of the non-moving party."  Keilch v. Romero, No. 15-CV-01526-LHK, 2016 WL 4398354, at *5 (N.D. Cal. Aug. 18, 2016) (citations and internal quotations omitted).  At summary judgment, courts do not "assess credibility or weigh the evidence, but simply determine whether there is a genuine factual issue for trial."  Id. (citations and internal quotations omitted).

The moving party bears the initial burden of informing the court of the basis for the motion and identifying the portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  If the moving party does not satisfy its initial burden, the nonmoving party has no obligation to produce anything and summary judgment must be denied. Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc., 210 F.3d 1099, 1102-03 (9th Cir. 2000). But if the moving party does meet this initial burden, the burden shifts to the nonmoving party to go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e); Celotex, 477 U.S. at 324.  The court must regard as true the opposing party's evidence, if supported by affidavits or other evidentiary material.  Celotex, 477 U.S. at 324.  However, the mere suggestion that the facts are in controversy, as well as conclusory or speculative testimony in affidavits and moving papers, is not sufficient to defeat summary

Case No.: 14-cv-00847-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

1  judgment.  See Thornhill Publ'g Co. v. GTE Corp., 594 F.2d 730, 738 (9th Cir. 1979).  Instead,

2  the non-moving party must come forward with admissible evidence to satisfy the burden.  Fed. R.

3  Civ. P. 56(c); see also Hal Roach Studios, Inc. v. Feiner & Co., Inc., 896 F.2d 1542, 1550 (9th Cir.

4  1990).

5        At summary judgment, "determinations that turn on questions of law, such as whether the

6  officers had probable cause or reasonable suspicion to support their actions, are appropriately

7  decided by the court."  Hopkins v Bonvicino, 573 F.3d 752, 762-63 (9th Cir. 2009).  "However, a

8  trial court should not grant summary judgment when there is a genuine dispute as to the facts and

9  circumstances within an officer's knowledge or what the officer and claimant did or failed to do."

10  Id. (internal quotations omitted).

## III.   DISCUSSION

12        Plaintiff filed the instant civil rights action against Defendants, alleging violations of his

13  Fourth, Fifth, and Fourteenth Amendment rights.  U.S. Const. Amends. I, V, and XIV.

14  Specifically, Plaintiff alleges Defendants struck him in his spine and kidney area, forcefully placed

15  a knee on his back, shined a light in his eyes, and continually struck him while he was on the

16  ground.  Defendants counter that their use of force was objectively reasonable under the

17  circumstances, and seek summary adjudication as to the following issues: (1) The Defendants first

18  use of force of taking hold of Plaintiff's arms to detain him did not violate his constitutional rights,

19  (2) The Defendants second use of force of taking Plaintiff to the ground did not violate his

20  constitutional rights, (3) Defendant Presser did not use excessive force on Plaintiff, (4) Plaintiff's

21  detention did not violate his constitutional rights, (5) Defendants search of Plaintiff's residence did

22  not violate his constitutional rights, (6) – (9) Defendants are entitled to qualified immunity for

23  grabbing Plaintiff's arms, taking him to the ground, detaining him, and searching his residence,

24  (10) - (12) no policy, practice, regulation, or custom of the county of Santa Cruz violated

25  Plaintiff's constitutional right to be free of excessive force, unreasonable seizure or detention, and

26  unreasonable searches (13) Defendants did not interfere with Plaintiff's constitutional or statutory

Case No.: 14-cv-00847-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR
PARTIAL SUMMARY JUDGMENT

United States District Court
Northern District of California

rights in violation of California Civil Code Section 52.1, (14) Defendants are not liable for

Intentional Infliction of Emotional Distress (IIED), (15) Defendants are not liable for Assault, (16)

Defendant Santa Cruz County and Santa Cruz County Sheriff's Office are not liable for

Negligence, (17) Defendants are not liable for False Imprisonment, (18) The exhaustion of

Plaintiff's exhaustion of administrative remedies with respect to California § 52.1 ("The Bane

Act") claim, intentional infliction of emotional distress, assault and battery, and negligence, and

(19) Plaintiff's entitlement to punitive and exemplary damages.  See Mot. at 2-3.

The Court addresses the federal and state law claims separately.

**A.     § 1983 Claim**

"Title 42 U.S.C. § 1983 provides a cause of action for the deprivation of rights, privileges,

or immunities secured by the Constitution or laws of the United States by any person acting under

color of any statute, ordinance, regulation, custom, or usage."  Tacci v. City of Morgan Hill, No.

C-11-04684-RMW, 2012 WL 195054, *1 (N.D. Cal. Jan. 23, 2012).  "Section 1983 is not itself a

source of substantive rights; rather it provides a method for vindicating federal rights elsewhere

conferred."  Jaramillo v. City of San Mateo, 76 F. Supp. 3d 905, 925-26 (N.D. Cal. 2014)

(citations and internal quotations omitted).  "To state a claim under Section 1983, a plaintiff must

allege: (1) the conduct complained of was committed by a person acting under color of state law;

and (2) the conduct violated a right secured by the Constitution or laws of the United States."

Tacci, 2012 WL 195054, at *1 (citing West v. Atkins, 487 U.S. 42, 48 (1988)).

**i.       Defendants Grab Plaintiff and Take Him to the Ground**

The parties dispute whether Defendants' grabbing of Plaintiff's arms and his subsequent

takedown constituted an objectively reasonable use of force.  Defendants argue that their conduct

was reasonable for several reasons.  Mot. at 22-23.  First, they were responding to a call involving

an armed and unidentified suicidal male.  Mot. at 23.  Second, upon arriving at Plaintiff's

residence, Plaintiff refused to comply with their instructions, used foul language, exhibited

aggressive behavior, stopped short of their location at the top of Plaintiff's driveway, and actively

7

Case No.: 14-cv-00847-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR
PARTIAL SUMMARY JUDGMENT

1  resisted their attempt to detain him.  Id.  In short, Defendants assert Plaintiff's hostile, aggressive,

2  and uncooperative behavior justified their use of force.  Id.

3      Plaintiff counters that Defendants' use of force was unreasonable and excessive.  Plaintiff

4  also argues he was tackled and brought to the ground by multiple deputies without being asked to

5  kneel down, turn around, or identify himself.  Opp. at 18.  Plaintiff also argues Defendants

6  improperly isolate each use of force, creating a misimpression that the application of force was

7  incremental.  Id.

8      The Fourth Amendment grants police officers the right to use "objectively reasonable force

9  in light of the facts and circumstances confronting them, without regard to their underlying intent

10  or motivation."  Jaramillo, 76 F. Supp. 3d at 917.  "To determine whether an officer's use of force

11  was reasonable, courts must balance the nature and quality of the intrusion on a person's liberty

12  with the countervailing governmental interests at stake."  Id. (citations and internal quotations

13  omitted).  This balancing requires the court to analyze the following factors: "(1) the severity of

14  the crime at issue; (2) whether the suspect poses an immediate threat to the safety of the officers or

15  others; and whether (3) he is actively resisting or attempting to evade arrest by flight."  Graham v.

16  Connor, 490 U.S. 386, 390 (1989).

17      In addition to the Graham factors, courts analyze the "totality of circumstances and

18  consider whatever specific factors may be appropriate in a particular case, whether or not listed in

19  Graham."  Bryan v. MacPherson, 630 F.3d 805, 826 (9th Cir. 2010).  The Ninth Circuit has held

20  that "on many occasions…summary judgment or judgment as a matter of law in excessive force

21  cases should be granted sparingly."  Jaramillo, 76 F. Supp. 3d at 917 (citations and internal

22  quotations omitted).  Primarily because "police misconduct cases almost always turn on a jury's

23  credibility determinations."  Id. (citations and internal quotations omitted).

24      In evaluating whether the circumstances in this case justified the police officers' use of

25  force, the court considers the totality of circumstances.  In the initial call to the 911 operator, Lara

26  (Plaintiff's daughter) reported that her husband had a shotgun in his hands, was threatening to kill

27

28  Case No.: 14-cv-00847-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR
PARTIAL SUMMARY JUDGMENT

United States District Court
Northern District of California

8

1    himself, and that she had a two-year old in her home.  The report described a dangerous situation

2    that could seriously harm those in and around the residence.

3        Defendants also assert Plaintiff did not pose an immediate threat to the safety of the

4    officers.  Dkt. No. 72 at ¶¶ 11-12.  Plaintiff counters that he did not pose a threat to Defendants.

5    There are several triable issues of material fact regarding whether Plaintiff posed an immediate

6    threat to Defendants' safety.  First, there is a genuine material dispute regarding whether Plaintiff

7    exhibited hostile, aggressive, and uncooperative behavior yelling, using foul language, tightening

8    his jaw, shaking his hands, clenching his fist, and scrunching his eyebrows.  Dkt. No. 72 at ¶¶ 11-

9    12; see also Dkt. No. 88-3 at 59:19-21; 60:14-17 ("I never clenched my fist once"; "I didn't clench

10   my jaw"); 62:8-15.

11       Second, after an initial refusal, Plaintiff complied with Defendants instructions and walked

12   towards their location at the top of the driveway, possibly with his hands raised at shoulder level.

13   Campbell Dep. at 53:8-17.  While Defendants neither accept nor concede this fact, they do assert

14   that Plaintiff was cooperative.  Dkt. No. 90-1 at 14:22-24; see also Dkt. No. 88-4 at 74:10-17.

15   Furthermore, Deputy Clark admits that he did not see anything in Plaintiff's hands that could be

16   considered a weapon.  Dkt. No. 88-3 at 248:6-14; 252:16-25 to 253:1-8.  Deputy Clark also did

17   not see Plaintiff carrying "a backpack" or "anything that would indicate Plaintiff was supporting a

18   scabbard or a carry case on his back."  Id.; Dkt. No. 88-4 at 50:12-15.

19       Therefore a jury could reasonably conclude that Plaintiff walked towards Defendants

20   without carrying a weapon, with his hands raised, was complaint, and arguably did not clench his

21   fist or jaw.  Because these facts are in dispute, there are triable issues of fact regarding whether

22   Plaintiff was an immediate threat to Defendants.  See Figueroa v. Gates, 207 F. Supp. 2d 1085,

23   1094 (C.D. Cal. 2002).

24       Finally, there is a triable issue of fact with respect to whether Plaintiff actively resisted

25   Defendants.  Defendants assert that when Deputy Luisi grabbed Plaintiff's arm, he successfully

26   pulled it away, thereby resisting their attempts to detain him.  Dkt. No. 72 at ¶ 17.  Plaintiff

27

28   Case No.: 14-cv-00847-EJD
     ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR
     PARTIAL SUMMARY JUDGMENT

United States District Court
Northern District of California

1    counters that he pulled his arm away only to "shield his face as he was slammed to the ground."

2    Dkt. No. 88-3 at 89:9-13.  Plaintiff further asserts that his actions were instinctive.  Id.

3        Therefore, since there are facts that are in conflict and subject to findings of credibility, a

4    reasonable jury, looking at the totality of circumstances, could conclude that Plaintiff did not pose

5    an immediate threat to Defendants' safety and that his actions did not rise to the level of active

6    resistance.  Accordingly, since there are triable issues of fact regarding the excessive force factors,

7    Defendants' motion for summary judgment as to the grabbing of Plaintiff's arm and his

8    subsequent takedown is DENIED.

9                    ii.    **Deputy Presser's Liability under § 1983**

10       Defendants argue that Deputy Presser is not liable under section 1983 because he did not

11    touch Plaintiff or participate in the conduct that allegedly forms the basis of the excessive force

12    claim.  Mot. at 25.  Plaintiff counters that Deputy Presser is liable irrespective of his individual

13    participation because Presser was on the scene and served as armed "overwatch."  Opp. at 20-21.

14       Police officers can be held liable for a violation of § 1983 even in situations where "they

15    do not engage in the unconstitutional conduct themselves."  Smith v. Kouri, No. CV-09-9219-

16    CAS-JCG, 2010 WL 2228423, at *4 (C.D. Cal. May 28, 2010).  "But even under such a theory of

17    liability, the Ninth Circuit requires integral participation of each officer as a predicate to liability."

18    Id. (citations and internal quotations omitted).  "Officers are not integral participants simply by the

19    virtue of being present at the scene of an alleged unlawful act."  Monteilh v. Cty. of Los Angeles,

20    820 F. Supp. 2d 1081, 1089 (C.D. Cal. 2011) (citations and internal quotations omitted); see also

21    Bresaz v. Cty. of Santa, No. 14-CV-03868-LHK, 2015 WL 1230316, at *4 (N.D. Cal. Mar. 17,

22    2015).  "Instead, integral participation requires some fundamental involvement in the conduct that

23    allegedly caused the violation."  Id. (citations and internal quotations omitted).

24       Here, Presser had a "less lethal" weapon in hand and was positioned at the top of the

25    driveway.  Dkt. No. 88-3 ("Presser Dep.") at 209:1-3.  Deputy Presser states that a less lethal

26    weapon is a 40-millimeter launcher that fires a round that is made of dense foam or rubber, and is

27

28                    10
Case No.: 14-cv-00847-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR
PARTIAL SUMMARY JUDGMENT

United States District Court
Northern District of California

meant to serve as a non-lethal distraction.  Presser Dep. at 188:12-25-189:1-25.  Presser goes on to state that he was instructed to serve as an "overwatch," which involved observing the house and the manner in which the other police officers interacted with Plaintiff.  Id. at 210:7-13.  The current facts are analogous to Melear v. Spears, 862 F.2d 1177, 1186 (5th Cir. 1989).  In Melear, the court held that an officer that stood armed watch outside an apartment door while his fellow officer performed a search of the apartment could be held liable under section 1983.  862 F.2d at 1186; see Hopkins v. Bonvicino, 573 F.3d 752, 770 (9th Cir. 2009); see also Boyd v. Benton Cty., 374 F.3d 773, 780 (9th Cir. 2004).  The Melear court further held that searching the apartment and standing armed guard were both police functions integral to the act of performing the search.  862, F.2d at 1186.

Similarly, Presser's actions of observing the home and the interaction of the other police officers with Plaintiff while carrying a non-lethal weapon constitutes an integral police function. Moreover, Presser's actions also amount to more than that of the officer in Hopkins.  Hopkins v. Bonvicino, 573 F.3d 752 (9th Cir. 2009).  In Hopkins, officer Nguyen was entitled to qualified immunity because he did not participate in the conversation in which his fellow officers decided to plan and execute the search of a home.  573 F.3d at 770.  By contrast, Presser was specifically instructed to carry a non-lethal weapon, and tasked with observing the other police officers' interaction with Plaintiff.  Hopkins, 573 F.3d at 770; see also Mitchell v. City of Pittsburgh, No. C-09-00794-SI, 2012 WL 3313178, at *23 (N.D. Cal. Aug. 13, 2012).   As such, Deputy Presser's actions are integral because they constitute "some fundamental involvement" in the conduct that caused the alleged violation.  Accordingly, Defendants' motion for summary judgment as to Presser's liability under section 1983 is DENIED.

### iii.   Defendants Search Plaintiff's Home

Defendants assert the "emergency aid" exception justifies the warrantless search of Plaintiff's residence.  Mot. at 27.  There were reasonable grounds to believe individuals needed immediate assistance because an emergency call was made and the caller stated that her husband

11

was armed and suicidal.  Id.  Moreover, Defendants assert the search was made only to ensure that

no one was injured and that the suicidal suspect was not on the premises.  Id. at 28.  Defendants

also assert that Lara gave them consent to search the apartment.  Plaintiff counters that the

emergency was over when Plaintiff walked up the driveway.  Opp. at 22.  Moreover, Plaintiff

asserts that no consent was given because Lara was not the property owner.  Id.

      "The emergency doctrine allows law enforcement officers to enter and secure premises

without a warrant when they are responding to a perceived emergency."  U.S. v. Brown, 392 Fed.

Appx. 515, 515 (9th Cir. 2010) (quoting United States v. Stafford, 416 F.3d 1068, 1073 (9th Cir.

2005)).  "The emergency doctrine is based on and justified by the fact that, in addition to their role

as criminal investigators and law enforcers, the police also function as community caretakers."

Stafford, 416 F.3d at 1073.  Under this doctrine, police officers may conduct a warrantless search

of an individual's premises if "(1) the police have reasonable grounds to believe there is an

emergency at hand and an immediate need for their assistance for the protection of life or

property; (2) the search is not primarily motivated by intent to arrest and seize evidence; and (3)

there is some reasonable basis, approximating probable cause, to associate the emergency with the

area or place to be searched."  Ferris v. City of San Jose, No. 11-CV-01752-LHK, 2012 WL

1355715, at *6 (N.D. Cal. Apr. 18, 2012) (citing Martin v. City of Oceanside, 360 F.3d 1078,

1081082 (9th Cir. 2004)).

      Here, it is undisputed that Lara called 911 and informed the operator that she had a two

year old child in her home, and that her husband had a shotgun and was threatening to kill himself.

Dkt. No. 71-1 at 2:5-17.  Thereafter, Lara and the operator engaged in several discussions in which

she stated that her husband was gone, she didn't know where he went, and was not sure if he used

a car when he left.  Id. at 3:1-2; 4:15.  At one point, she contradicted her previous statement and

informed the operator that her husband was still at home.  Id. at 5:11-18.  In light of such

conflicting information, it was reasonable for Defendants to be unsure about whether the suicidal

and possibly armed individual was still in Plaintiff's home by the time they arrived.  Officers

Case No.: 14-cv-00847-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR
PARTIAL SUMMARY JUDGMENT

1    cannot be expected to reconcile between contradictory statements made by 911 callers when

2    responding to emergency situations because doing so would increase the risk to their safety.  The

3    fact that Lara unequivocally informed them that there was a suicidal male with a shotgun in the

4    same home as her two year old provides reasonable grounds to believe there was an emergency

5    that required immediate assistance.

6        Next, when analyzing whether a particular search was motivated by an intent to arrest and

7    seize evidence, the Ninth Circuit in <u>Brigham City, Utah v.Stuart</u> reasoned that the focus should be

8    more on whether the action was reasonable, and not on the subjective element of Defendant's

9    intent or motivation.  547 U.S. 398, 398 (2006) (holding that subjective motivation is irrelevant,

10   and that it does not matter if Defendants entered the kitchen to arrest respondents and gather

11   evidence, or assist the injured and prevent further violence); <u>see also</u> <u>Hao Qi-Gong v. City of</u>

12   <u>Alameda</u>, No. C-03-05495-TEH, 2007 WL 160941, at *4, n.2 (N.D. Cal. Jan. 17, 2007).

13   Here, intent is not at issue because neither party asserts or argues that Defendants' search of

14   Plaintiff's property was motivated by any intent to arrest or seize evidence.  As such, the court

15   finds that intent element supports Defendants' position.

16       Finally, there is no dispute that Defendants were responding to an emergency situation that

17   was related to the police in the initial call.  Therefore, the police were justified in searching

18   Plaintiff's home to confirm that there were no injuries and that no one was in any immediate

19   danger.

20       Therefore, based on the above, Defendants' motion for summary judgment as to validity of

21   the search of Plaintiff's residence is GRANTED.

22              **iv.     Defendants Detain Plaintiff**

23       Defendants assert Plaintiff's detention was objectively reasonable because there was

24   probable cause to search the residence, the situation was inherently dangerous because firearms

25   were involved, and the detention only lasted long enough for Defendants to confirm that the

26   situation was safe.  Mot. at 25.  Defendants also contend that it is not unreasonable to handcuff

27

28
Case No.: 14-cv-00847-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR
PARTIAL SUMMARY JUDGMENT

1    individuals as part of an investigatory stop if doing so would ensure the officers' safety.  Id. at 36.

2    Plaintiff counters that Defendants use of force was excessive because he did not pose a threat to

3    anyone.  Opp. at 21.

4        Officers may detain individuals using handcuffs in order to complete a lawful search.

5    Smith v. City of Santa Clara, No. 5:11-CV-03999-LHK, 2013 WL 164191, at *11 (N.D. Cal. Jan.

6    15, 2013) (citing Muehler v. Mena, 544 U.S. 93, 99 (2005)).  The detention "may be coextensive

7    with the period of a search, and require no further justification."  Dawson v. Cty. of Seattle, 435

8    F.3d 1054, 1066 (9th Cir. 2006).  The police do not, however, possess unfettered authority to

9    detain individuals.  Id.

10        Since the court finds that the search of Plaintiff's home was lawful, the determinative

11    inquiry regarding Plaintiff's detention is whether it was coextensive with the search.  It was.  After

12    Plaintiff was picked up from the ground, handcuffed, and placed in the squad car, Defendants

13    conducted a protective sweep of his home.  Campbell. Dep. at 107:7-9; Id. at 103:2-13; Id. at

14    119:22-24; Id. 120:7-9 ("To your knowledge they conducted the sweep while you were still in the

15    car?" to which Plaintiff responds "To my knowledge"); see also Id. at 122:3-8 ("I saw them

16    walking around in the house.").  While the parties dispute the exact length of the detention and

17    search, they agree that Plaintiff was taken out of the car and immediately informed that the

18    officers had conducted a protective sweep of his home.  Id. at 103:2-13; Id. at 119:22-24; Id.

19    120:7-9; see also Id. at 122:3-8.  As such, these facts demonstrate that search was coextensive with

20    the detention.

21        While in the squad car, the police officers focused their questions on issues of safety such

22    as whether Plaintiff owed a gun or was aware of any weapons in his home.  Plaintiff also admits

23    that he was not harmed while in the car and was released in a reasonable manner upon completion

24    of the search.  Id. at 113-115; Id. at 117:2-9.  As such, Defendants did not exercise unfettered

25    authority in detaining Plaintiff.

26        Therefore, based on the above, Defendants' motion for summary judgment as to Plaintiff's

27

28    14
      Case No.: 14-cv-00847-EJD
      ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR
      PARTIAL SUMMARY JUDGMENT

United States District Court
Northern District of California

detention is GRANTED.

### v. Qualified Immunity for Grabbing Plaintiff and Taking Him to the Ground

Defendants assert that they are entitled to qualified immunity because they only used such force as was necessary to restrain Plaintiff and ensure their safety. Mot. at 29-30. Defendants also contend that their use of force constituted a limited intrusion of Plaintiff's rights. Id. at 30. Plaintiff counters that the two step test outlined in Saucier v. Katz, 533 U.S. 194 (2001) has been satisfied. Plaintiff contends Defendants violated his constitutional rights by using excessive force. And even if there was no clear constitutional violation, Plaintiff contends that there are at least factual disputes with respect to whether the law regarding the reasonable use of force was clearly established, which precludes summary judgment at this stage. Opp. at 23.

The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009). "It balances two important interests - the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Id. The qualified immunity analysis involves a two-step inquiry. First, a court must decide "whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right." Id. (citations and internal quotations omitted). Second, if the plaintiff has satisfied this first step, the court must determine "whether the right at issue was clearly established at the time of defendant's alleged misconduct." Id. (citations and internal quotations omitted). At summary judgment, "determinations that turn on questions of law, such as whether the officers had probable cause or reasonable suspicion to support their actions, are appropriately decided by the court." Hopkins v Bonvicino, 573 F.3d at 752, 762-63 (9th Cir. 2009). "However, a trial court should not grant summary judgment when there is a genuine dispute as to the facts and circumstances within an officer's knowledge or what the officer and claimant did or failed to do." Id. (internal quotations omitted).

15

United States District Court
Northern District of California

1    Here, there are genuine factual disputes regarding whether Plaintiff exhibited hostile and

2    aggressive behavior such as shaking his hands, clenching his fists, and using foul language.  These

3    disputes relate to whether Defendants perception of Plaintiff's behavior was reasonable and

4    justified their use of force, including grabbing his arms and taking him to the ground.  Analyzing

5    such disputes to determine whether Plaintiff's behavior constituted an immediate threat to

6    Defendants' safety is the responsibility of the jury.  Therefore, the court cannot grant qualified

7    immunity based on the first inquiry because Defendants cannot, at this stage, prove the absence of

8    a constitutional violation.

9    However, Defendants may yet be entitled to qualified immunity if reasonable police

10    officers in Defendants situation could have believed that their conduct was in line with established

11    law.  With that said, the court addresses the second prong of the qualified immunity analysis:

12    whether the right at issue was clearly established at the time of defendants' alleged misconduct.

13    The second prong "requires two separate determinations: (1) whether the law governing

14    the conduct at issue was clearly established, and (2) whether the facts as alleged could support a

15    reasonable belief that the conduct in question conformed to the established law."  Cotter v. City of

16    Long Beach, No. CV 14-05495 DDP, 2016 WL 370683, at *3 (C.D. Cal. Jan. 29, 2016) (citing

17    Act UP!/Portland v. Bagley, 988 F.2d 868, 873 (9th Cir. 1993)).

18    Here, the conduct at issue involves the force used by Defendants to bring down and detain

19    plaintiff - specifically the grabbing of his arms and his subsequent takedown.  Analyzing the issue

20    of excessive force involves balancing the nature and quality of the intrusion on a person's liberty

21    with the countervailing governmental interests at stake by analyzing whether the crime at issue

22    was severe, whether the suspect poses an immediate threat to the safety of the officers or others,

23    and if the suspect actively resisted or attempted to evade arrest by flight.  Graham, 490 U.S. at

24    390.

25    As stated above, there is a triable issue of fact regarding whether Plaintiff posed an

26    immediate threat to officers.  Specifically, whether Plaintiff exhibited hostile, aggressive, and

27

16

28    Case No.: 14-cv-00847-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR
PARTIAL SUMMARY JUDGMENT

United States District Court
Northern District of California

uncooperative behavior including yelling, using foul language, tightening his jaw, shaking his hands, clenching his fist, and scrunching his eyebrows.  See Dkt. No. 72 ("Luisi Dep.") at ¶¶ 11-12; see also Campbell Dep. at 59:19-21; 60:14-17.  Therefore, the court cannot conclude as a matter of law that the alleged facts support a reasonable belief that Defendants' conduct conformed to the established law.  Accordingly, the Defendants' motion for summary judgment on the issue of qualified immunity for grabbing Plaintiff's arm and taking him to the ground is DENIED.

### vi.   Qualified Immunity for Detaining Plaintiff and Searching his Home

Since the court has ruled in favor of Defendants on the issue of Plaintiff's detention and the search of his residence, there is no need to go through the qualified immunity analysis for these two issues.

### vii.   Monell Claim

A municipality cannot be held liable under section 1983 simply because it employs a tortfeasor.  Monell v. Dep't of Soc. Servs. of N.Y., 436 U.S. 658, 691 (1978).  For liability to attach, a municipal "policy or custom must have caused the constitutional injury.  Jaramillo, 76 F. Supp. 3d 923 (citations and internal quotations omitted).  "This policy can be of action or inaction."  Id.  Moreover, the Plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the moving force behind the alleged injury.  Id.  (citing Bd. Of Cty. Com'rs of Bryan Cty., Okl. V. Brown, 520 U.S. 397, 404 (1997)).

Municipal liability can be established in the following three ways: "(1) the plaintiff may prove that a city employee committed the alleged constitutional violation pursuant to a formal governmental policy or a longstanding practice or custom which constitutes the standard operating procedure of the local governmental entity; (2) the plaintiff may establish that the individual who committed the constitutional tort was an official with final policy-making authority and that the challenged action itself thus constituted an act of official governmental policy; or (3) the plaintiff may prove that an official with final policy-making authority ratified a subordinate's

Case No.: 14-cv-00847-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

1   unconstitutional decision or action and the basis for it." <u>Jaramillo</u>, 76 F. Supp. 3d at 924 (citations

2   and internal quotations omitted).

3        Plaintiff asserts that Santa Cruz County and Santa Cruz County Sheriff's Office are liable

4   under <u>Monell</u> because the county made a conscious decision to act with indifference when they

5   failed to conduct an investigation of the incident involving Plaintiff and the Defendants.  Opp. at

6   24-25.  This omission, Plaintiff asserts, also satisfies the ratification requirement and is sufficient

7   to support an inference that the unconstitutional conduct was consistent with the policies of the

8   County.  <u>Id.</u>  Plaintiff then contends that Santa Cruz County's failure to keep statistics on

9   excessive force complaints or constitutional violations, its inability to train police officers to use

10  voice recorders, and their lack of knowledge of POST standards is further proof that the county is

11  liable under <u>Monell</u>.  <u>Id.</u> at 25.  The court disagrees.

12       Here, Plaintiff fails to provide evidence of a formal governmental policy or a longstanding

13  practice that deprived Plaintiff of his constitutional rights.  There is also no evidence to support an

14  inference that such a policy existed or was relied upon by Defendants.  <u>Cameron v. Craig</u>, 713

15  F.3d 1012, 1023 (9th Cir. 2013) ("[Plaintiff] has not identified any custom or policy of the County

16  that guided the deputies' use of force in the search and arrest.  The County is therefore entitled to

17  summary judgment on the § 1983 claim.").  Plaintiff simply asserts that Defendants used

18  excessive force to violate his Fourth Amendment rights.  In essence, Plaintiff relies on one

19  incident – the alleged used of excessive force - to allege that there was a constitutional violation,

20  while failing to show it was based on any policy or longstanding practice.  Plaintiff also fails to

21  provide evidence that such practices were frequent and consistent.  <u>Trevino v. Gates</u>, 99 F.3d 911,

22  918 (9th Cir. 1996) ("Liability for improper custom may not be predicated on isolated or sporadic

23  incidents; it must be founded upon practices of sufficient duration, frequency and consistency that

24  the conduct has become a traditional method of carrying out policy.").  Plaintiff's argument that

25  the county's failure to maintain statistics on excessive force complaints is unconstitutional is

26  likewise unpersuasive, because it is also not associated with any practice, custom, procedure, or

27

28  Case No.: 14-cv-00847-EJD
    ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR
    PARTIAL SUMMARY JUDGMENT

United States District Court
Northern District of California

1   POST standards.  Therefore, neither Santa Cruz County nor the Santa Cruz County Sheriff's

2   Office will be liable under <u>Monell</u> based on any formal governmental policy or longstanding

3   practice.

4       Next, Plaintiff fails to offer evidence that shows either Deputies Luisi, Delonrenzo,

5   Presser, or Sergeant Clark possessed any final policy making authority on the night of the incident.

6   Therefore, neither Santa Cruz County nor the Santa Cruz County Sheriff's Office will be liable

7   under <u>Monell</u> based on the theory that the Defendants conduct on the night of the incident

8   constituted an act of official government policy.

9       Finally, Plaintiff's argument that the County's failure to investigate the incident of

10  February 1, 2013 satisfies the ratification requirement and supports an inference of

11  unconstitutional conduct consistent with County policy is unpersuasive for several reasons.  First,

12  since there are triable issues of fact with respect to the Defendants use of force, the court has not

13  found that there was a constitutional violation.  Secondly, Plaintiff's reliance on its cited cases is

14  misplaced.  <u>Nelson v. City of Davis</u>, 709 F. Supp. 2d 978 (E.D. Cal. 2010); <u>Watkins v. City of</u>

15  <u>Oakland, Cal.</u>, 145 F.3d 1087 (9th Cir. 1998).  In <u>Nelson</u>, the City of Davis police department

16  dispersed a group of approximately one thousand people that had gathered at a party in an

17  apartment complex with the use of pepperball launchers.  <u>Nelson</u>, 709 F. Supp. 2d at 982.  Peace

18  Officer Standards Training ("POST") guidelines stated that these launchers could be reliably

19  aimed at suspects "at distances up to thirty feet."  <u>Id.</u>  Beyond thirty feet, the pepper launcher's

20  reliability decreases.  <u>Id.</u> at 988.  The officers in <u>Nelson</u> used the launchers from a distance of 45

21  feet.  <u>Id.</u>  Thereafter, the individuals gathered at the party filed complaints with the police

22  department, which were not investigated by either the chief of police or the city.  The <u>Nelson</u> court

23  held, in light of the above information, that the chief's failure to investigate the complaints and his

24  knowledge of the fact that pepper launchers' accuracy reduces beyond thirty feet is sufficient was

25  sufficient to support an inference that he ratified the conduct of the officers using the launchers at

26  45 feet.

27

28  Case No.: 14-cv-00847-EJD
    ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR
    PARTIAL SUMMARY JUDGMENT

United States District Court
Northern District of California

The facts of the current case are not analogous to those in <u>Nelson</u>.  Unlike <u>Nelson</u>, where there was noncompliance with a clearly stated policy associated with the use of a weapon, the Plaintiff fails to point to any such policy, custom, or POST standard.  Plaintiff also admits that he did not file a citizen's complaint and is unaware of anyone else that may have done so.  Dkt. No. 90-3 ("Exh. 31") at 3:15-16- 4:3-5.  The current facts are also non-analogous to <u>Watkins</u>.  In <u>Watkins</u>, the chief of police signed an internal affairs report that dismissed Plaintiff's complaint despite evidence of excessive force provided in the report.  145 F.3d at 1093.  Here, there was no such action taken by either Santa Cruz County or the Sheriff's Office.

Accordingly, in the absence of any evidence upon which a jury could find liability under <u>Monell</u>, Defendants' motion for summary judgment as to the <u>Monell</u> claim is GRANTED.

**C.      State Law Claims**

**i.      <u>California Civil Code § 52.1</u>**

Defendants assert that Plaintiff's claim under California Civil Code section 52.1, the Bane Act, fails because Plaintiff does not establish evidence of a constitutional or statutory violation accompanied by actual or attempted threats, intimidation, or coercion.  Mot. at 32.  Plaintiff counters that evidence of a constitutional violation is itself sufficient to satisfy a Bane Act claim.  Opp. at 26.  Moreover, Plaintiff asserts that a 911 dispatcher's statement that Plaintiff's door would be broken down unless he went outside to talk to the deputies constitutes a threat.  <u>Id.</u>

California Civil Code section 52.1 serves as a state law remedy for constitutional and statutory violations based on intimidation, coercion, and threats.  Cal. Civ. Code § 52.1.  There is a split in authority with respect to the intimidation, coercion, and threats requirement stemming from courts varying interpretations of <u>Shoyoye v. Cty. of Los Angeles</u>, 203 Cal. App. 4th 947 (2012).  In <u>Shoyoye</u>, a plaintiff that was lawfully detained and arrested, remained in county jail for a period of an extra sixteen days because of an unintentional clerical error on the part of the county.  203 Cal. App. 4th at 950, 959.  When the Plaintiff was released upon discovery of this mistake, he brought a claim against the county under § 52.1.  The <u>Shoyoye</u> court held that not

20

United States District Court
Northern District of California

every wrongful detention violated the Bane Act, and that a Bane Act violation did not occur because the detention occurred due to negligence and not because of a volitional act meant to interfere with a constitutional right.  203 Cal. App. 4th at 957.  The court in <u>Shoyoye</u> also noted that multiple references to violence or threats of violence in the statute indicates that the statute was not meant to redress harm caused by to human clerical errors such as overdetention.  203 Cal. App. 4th at 959.

In light of <u>Shoyoye</u>, some federal courts have ruled that allegations of excessive force are sufficient in and of themselves to allege a Bane Act claim, while others have said that the Bane Act requires coercion that goes beyond the allegations that give rise to the section 1983 claim.   <u>Han v. Cty. of Los Angeles</u>, 2016 WL 2758241, *1 (C.D. Cal. May 12, 2016) (holding that the Bane Act requires coercion beyond the section 1983 allegations); <u>Cameron</u>, 713 F.3d at 1022 (holding that the elements of an excessive force claim under section 52.1 are the same as those under section 1983); <u>Chaudhry v. Cty. of Los Angeles</u>, 751 F.3d 1096, 1105 (9th Cir. 2014) (same).

The court finds that the current facts are readily distinguishable from those in <u>Shoyoye</u>, which involved a clerical error that resulted in overdetention of an inmate.  In contrast, Defendants' interaction with Plaintiff was deliberate and intentional.  It involved instructing Plaintiff to walk towards the top of driveway, and culminated in multiple deputies acting in a coordinated fashion to grab Plaintiff's arms and bring him to the ground.  <u>See</u> <u>Barragan v. Cty. of Eureka</u>, No. 15-CV-02070-WHO, 2016 WL 4549130, at *8 (N.D. Cal. Sept. 2016); <u>see also</u> <u>Dillman</u>, 2013 WL 1907379, at *21 (holding that where Fourth Amendment excessive force claims are raised and intentional conduct is at issue, Plaintiff does not need to allege a showing of coercion that is independent from the use of force).

Therefore, Defendants' motion for summary judgment with respect to §52.1 is DENIED.

### ii.   <u>Intentional Infliction of Emotional Distress</u>

Defendants assert Plaintiff's IIED claim should be dismissed because government code

Case No.: 14-cv-00847-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR
PARTIAL SUMMARY JUDGMENT

United States District Court
Northern District of California

section 820.2 grants immunity to peace officers for discretionary acts, the force exerted by deputies was objectively reasonable, and no treatment was sought for mental health damages. Mot. at 34.  Plaintiff counters that "pinning, hitting, handcuffing" him constituted extreme and outrageous conduct that humiliated and embarrassed him.  With respect to section 820.2, Plaintiff asserts the statute does not provide any protection for excessive force based claims.  Id.

To establish the prima facie case of Intentional Infliction of Emotional Distress under California law, a plaintiff must show: "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; and (2) the plaintiff's suffering severe and extreme emotional distress; and (3) actual and proximate causation of emotional distress by the defendant's outrageous conduct....conduct to be outrageous must be so extreme as to exceed all bounds of that usually tolerated in a civilized community." Jaramillo, 76 F. Supp. 3d at 925-26.  A defendant's conduct is outrageous when it is "so extreme as to exceed all bounds of that usually tolerated in a civilized society.  Id. at 926.

Here, Plaintiff's Intentional Infliction of Emotional Distress claim is based entirely on the excessive force claim, eliminating any immunity that Defendants might enjoy under California Government Code Section 820.2.  See Martin v. Cty. of South Lake Tahoe, No. CIV. S-05-2167-FCD-KJM, 2007 WL 2176372, at *13 (E.D. Cal. Jul. 26, 2007); see also Baglieri v. Cty. of San Francisco, NO. C-10-00284-MEJ, 2011 WL 62224, at *15 (N.D. Cal. Jan. 7, 2011).  With that said, the court proceeds to the elements of IIED.

First, if a jury finds credible Plaintiff's allegations that multiple deputies grabbed his arms and legs and brought him to down on a gravel filled driveway despite his full cooperation, it could reasonably find Defendants' conduct extreme and outrageous.  Campbell Dep. 53:8-17; 15:24-24–16:1-6; see also Dkt. No. 88-3 ("Presser Decl.") at 201:17-19.  Second, a jury could also reasonably conclude that Defendants' conduct actually and proximately caused Plaintiff to suffer embarrassment, humiliation, fear, and mental anguish because it was due to Defendants' instructions that Plaintiff walked on gravel in the middle of the night towards officers that grabbed

Case No.: 14-cv-00847-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR
PARTIAL SUMMARY JUDGMENT

United States District Court
Northern District of California

1    him and brought him to the ground, possibly without warning.  Dkt. No. 88-5 at ¶ 2.

2           Accordingly, Defendants' motion for summary judgment with respect to the IIED claim is

3    DENIED.

4                  iii.    **Assault and Battery**

5           Defendants assert that the Assault and Battery claim fails because Plaintiff had "no

6    apprehension or fear of imminent contact."  Mot. at 35.  In addition, Defendant Officers assert that

7    their use of force was reasonable, which bars most aspects of this claim.  Id.  Finally, Defendant

8    Officers assert that this claim is subsumed by the Fourth Amendment section 1983 excessive force

9    claim.  Plaintiff counters that he was apprehensive of imminent harm because he saw a "shadow

10   pass in front of him before being attacked."  Opp. at 28.

11          To establish a prima facie case of assault and battery, Plaintiff must demonstrate that

12   unreasonable force was used.  Nelson v. City of Davis, 709 F. Supp. 2d 978, 992 (2010).  Because

13   the same standards apply to both the state law assault and battery and section 1983 claims

14   premised on the use of constitutionally prohibited excessive force, the fact that Plaintiff's section

15   1983 claims under the Fourth Amendment survive summary judgment mandates that the assault

16   and battery claims also similarly survive.  Id.; see also Susag v. City of Lake Forest, 94 Cal. App.

17   4th 1401, 1412-13 (2002) ("it appears unsound to distinguish between section 1983 and state law

18   claims arising from the same alleged misconduct."); see Jaramillo, 76 F. Supp. 3d at 925; see also

19   Carter v. City of Carlsbad, 799 F. Supp. 2d 1147, 1164 (S.D. Cal. 2011).

20           For reasons extensively discussed above, there are triable issues of fact regarding whether

21   Defendants use of force was reasonable.  As such, based on the evidence presented, the Court

22   DENIES Defendants' motion for summary judgment with respect to the assault and battery

23   claims.  See Jaramillo, 76 F. Supp. 3d at 925 (holding that since there are issues of material fact

24   regarding whether Defendant police officers use of force was reasonable, the assault and battery

25   claim should be denied).

26

27                                          23

28   Case No.: 14-cv-00847-EJD
     ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR
     PARTIAL SUMMARY JUDGMENT

United States District Court
Northern District of California

1

iv.   **Negligence**

2          Defendants assert that the negligence claim against Santa Cruz County and Santa Cruz

3    County Sheriff's Office fails because common law negligence is not statutorily authorized against

4    governmental entities.  Mot. at 35.  In addition, Defendants assert that the elements of Negligence

5    are subsumed by the section 1983 claim.  Id.  Plaintiff counters that since there is a triable issue of

6    fact on whether Santa Cruz county and its Sheriff's Office are vicariously liable for the Deputies

7    use of excessive force, Defendants motion should be denied.  Opp. at 29.

8          "In order to prove facts sufficient to support a finding of negligence, a plaintiff must show

9    that the defendant had a duty to use due care, that he breached that duty, and that the breach was

10   the proximate and legal cause of the resulting injury."  Reed v. City of Modesto, 122 F. Supp. 3d

11   967, 982-83 (citations and internal quotations omitted).  "Peace officers have a duty to act

12   reasonably when using force, but the reasonableness of an officer's actions must be determined in

13   light of the totality of the circumstances."  Jaramillo, 76 F. Supp. 3d at 926; see also Reed, 122 F.

14   Supp. 3d at 981-82.  Moreover, a public entity may be liable for an injury caused by the

15   intentional act of its employees if such acts are performed within the scope of employment.

16   Kenney v. Cty. of San Diego, No. 13-CV-248-WQH-DHB, 2013 WL 5346813, at *7 (S.D. Cal.

17   Sept. 20, 2013); see also Carter v. City of Carlsbad, 799 F. Supp. 2d 1147, 1164-65 (S.D. Cal.

18   2011).  Additionally, a public entity is only immune from liability when the individual employee

19   that caused the injury is also immune.  Carter, 799 F. Supp. 2d at 1165.

20          As discussed above, there are genuine factual disputes regarding whether Defendants acted

21   reasonably by grabbing Plaintiff's arms and taking him to the ground.  And since negligence

22   claims are analyzed under the Fourth Amendment's reasonableness standard, it would not be

23   appropriate to grant the motion for summary judgment as to Defendants Luisi, Delorenzo, Presser,

24   and Clark, because a jury could reasonably conclude that their use of force was excessive.

25   Jaramillo, 76 F. Supp. 3d at 927 (holding that since a reasonable jury could find that the officer

26   acted unreasonably in their use of force, the officers and the city's motion for summary judgment

27

28

24

Case No.: 14-cv-00847-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR
PARTIAL SUMMARY JUDGMENT

United States District Court
Northern District of California

1  as to the negligence claim should be denied).

2  　　And since Defendants were responding to a 911 call, their actions fall within the scope of

3  their employment as police officers.  Moreover, as there is a genuine factual dispute regarding

4  whether the conduct of Defendants Luisi, Delorenzo, Presser, and Clark was reasonable, none of

5  them are immune from liability.  Consequently, neither Santa Cruz County nor Santa Cruz County

6  Sheriff's Office is immune from liability.  As such, Defendants' motion for summary judgment as

7  to the Negligence claim regarding Santa Cruz County and Santa Cruz County Sheriff's Office is

8  DENIED.

9  　　　　　　　　　**v.  False Imprisonment**

10  　　Defendants assert that because they had probable cause to detain the Plaintiff, their actions

11  were privileged and not actionable under a False Imprisonment claim.  Mot. at 36.  Plaintiff

12  counters that Defendants' conduct of tackling, handcuffing, and taking Plaintiff into custody was

13  not privileged.  Opp. at 29.

14  　　"The tort of false imprisonment requires: (1) nonconsensual intentional confinement of a

15  person (2) without lawful privilege (3) for an appreciable period of time however brief."

16  Helmantoler v. City of Concord, No. 14-CV-02855-HSG, 2015 WL 3613558, at *11 (N.D. Cal.

17  June 9, 2015).  "Courts analyze state false arrest and imprisonment claims under the same rubric

18  as § 1983 claims based on false arrest under the Fourth Amendment."  Jaramillo, 76 F. Supp. 3d at

19  927; see Garcia v. Cty. of Merced, 639 F.3d 1206, 1213 (9th Cir. 2011).

20  　　Here, since the court found as a matter of law that Plaintiff's detention was coextensive

21  with the lawful search of his residence, Defendants conduct did not violate Plaintiff's rights under

22  § 1983 with respect to Plaintiff's detention and the search of his residence.  And since false

23  imprisonment under claims are analyzed under "the same rubric" as §1983 claims, Defendants'

24  motion as to the False Imprisonment claim is likewise GRANTED.

25  　　　　　　　　　**vi.  Exhaustion of Administrative Remedies**

26  　　Defendants assert Plaintiff's California Civil Code § 52.1, Intentional Infliction of

27  

28  Case No.: 14-cv-00847-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR
PARTIAL SUMMARY JUDGMENT

25

*United States District Court*
*Northern District of California*

Emotional Distress, Assault and Battery, and Negligence claims are barred because the factual and legal basis for state law claims are not fairly reflected in the tort claims presented to the county. Mot. at 36.  Plaintiff counters that Defendant's reliance on <u>Doe 1 v. Cty. of Murrieta</u>, 102 Cal. App 4th 899 (2002) is misplaced because it involved contract claims, while the current case involves tort claims.  Opp. at 30.  Additionally, Plaintiff asserts and that he provided a factual description of the incident that was in substantial compliance with section 910.  Opp. at 30. Moreover, Plaintiff asserts that the claim filed with Defendants was predicated on the same fundamental facts as the operative claims of the Complaint.  <u>Id.</u>

"California Government Code section 910 requires, among other things, that the claim show a general description of the indebtedness, obligation, injury, damage or loss incurred so far as it may be known at the time of presentation of the claim." <u>Ortiz v. Lopez</u>, 688 F. Supp. 2d 1072, 1084 (E.D. Cal. 2010) (citations and internal quotations omitted).  Moreover, it is only when there has been "a complete shift in allegations, usually involving an effort to premise civil liability on acts or omissions committed at different times by different persons than those described in the claim," have courts reasoned that it is appropriate to bar complaints.  <u>Id.</u>  Finally, substantial compliance with section 910 is sufficient to satisfy the section's requirements.  <u>Id.</u>  "The test for substantial compliance is whether the face of the filed claim discloses sufficient information to enable the public entity to make an adequate investigation of the claim's merits and settle it without the expense of litigation." <u>Id.</u> at 1085.

Here, Plaintiff provides sufficient information to substantially comply with the requirements of section 910.  He notes that the claims arose out of the alleged use of excessive force by Defendants against Plaintiff, including the "twisting and manhandling" of his arm. 71-22 at 1.  Plaintiff also notes the date of the incident, the location, and the fact that Defendants were responding to a call involving a potential suicide.  <u>Id.</u>  Finally, he identifies all of the Defendants involved, the amount of present and future damages claimed, and basis for these claims.  <u>Id.</u> Accordingly, Defendant's motion for summary judgment as to this claim is DENIED.

United States District Court
Northern District of California

1

### vii.   **Punitive or Exemplary Damages**

2       Defendants assert that since none of them bore Plaintiff ill will, or acted with malice or

3  criminal indifference, punitive damages are not warranted.  Mot. at 37.  Plaintiff argues otherwise.

4       Punitive damages under federal law may be awarded if Plaintiff demonstrates that

5  Defendants engaged in "malicious, wanton, or oppressive acts."  Hwang v. City. and Cty. of San

6  Francisco, No. C-07-2718-MMC, 2008 WL 4279686, at *5 (N.D. Cal. Sept. 15, 2008) (citing

7  Dang v. Cross, 422 F.3d 800, 807 (9th Cir. 2005)).  As to the state law claims, the trier of fact may

8  award punitive damages if Defendants are shown to have engaged in oppression, fraud, or malice.

9  Id. (citations and internal quotations omitted).  "An act is oppressive if it injures, damages, or

10  otherwise violates the rights of another person with unnecessary harshness or severity.  Id. (citing

11  Dang, 422 F.3d at 809).  The Plaintiff must prove with clear and convincing evidence that a

12  defendant is guilty of oppression or malice.  Garcia v. Fortis Capital IV, LLC, No. 5:12-cv-06491

13  EJD, 2014 WL 1813295, at *3 (N.D. Cal. May 6, 2014).

14       Here, since there are triable issue of fact regarding whether Defendants' use of force was

15  excessive, the court cannot conclude as a matter of law that Defendants' conduct was not

16  unnecessary severe or harsh.  Consequently, it cannot conclusively rule that Defendants actions

17  were not oppressive.  Therefore, the court DENIES Defendant's motion for summary judgment

18  with respect to punitive or exemplary damages.  The claim for punitive and exemplary damages is

19  not asserted against either Santa Cruz County or Santa Cruz County Sheriff's Office.

20  ## IV.   **CONCLUSION**

21       For the aforementioned reasons, the Court GRANTS in part and DENIES in part

22  Defendants' Motion for Partial Summary Judgment as follows:

23       1.       As to the first cause of action asserting violations of 42 U.S.C. § 1983 against

24  Defendants Clark, Delorenzo, Luisi, and Presser: Defendants' motion as to the first and second use

25  of force is DENIED.

26       2.       Defendants' motion is DENIED as to Deputy Presser's liability under 42 U.S.C. §

27

28  Case No.: 14-cv-00847-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR
PARTIAL SUMMARY JUDGMENT

1    1983.

2         3.      Defendants' motion is GRANTED as to Plaintiff's detention and the search of his

3    residence.

4         4.      Defendants' motion as to Qualified Immunity for the first and second use of force

5    is DENIED.

6         5.      Defendants' motion as to Qualified Immunity for detaining Plaintiff and searching

7    his home is DENIED AS MOOT.

8         6.      Defendants' motion as to the Monell claim is GRANTED.

9         7.      Defendants' motion as to the California Civil Code § 52.1 is DENIED.

10        8.      Defendants' motion as to the Intentional Infliction of Emotional Distress claim is

11   DENIED.

12        9.      Defendants' motion as to the Assault and Battery claim is DENIED.

13        10.     Defendants' motion as to the Negligence claim is DENIED as to Sergeant Clark

14   and Deputies Luisi, Delorenzo, and Presser, and DENIED as to Santa Cruz County and Santa Cruz

15   County Sheriff's Office.

16        11.     Defendants' motion as to the False Imprisonment claim is GRANTED.

17        12.     Defendants' motion as to Exhaustion of Administrative Remedies is DENIED.

18        13.     Defendants' motion as to Punitive and Exemplary damages is DENIED.

19

20        **IT IS SO ORDERED.**

21   Dated: November 18, 2016

22                                            _____
23                                            EDWARD J. DAVILA
                                              United States District Judge
24

25

26

27
                                              28
28   Case No.: 14-cv-00847-EJD
     ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR
     PARTIAL SUMMARY JUDGMENT

United States District Court
Northern District of California